No. 1855

Second Circuit Appeal

TOM B. HENDERSON v. A. I. ALFORD

(March 17, 1925, Opinion and Decree)
(April 11, 1925, Rehearing Refused)

(*Syllabus by the Editor.*)

1. **Louisiana Digest—Bills and Notes— Par. 209.**
   Although Articles 324, 325 and 326 of the Code of Practice require that if the signature of defendant is denied by him and it is afterwards proven, the defendant is barred from every other defense; the signature not specifically denied, if proven, does not cut off the defendant from other defenses.

2. **Louisiana Digest—Pleading—Par. 32, 42.**
   The defendant who, in answering each paragraph specifically, merely states the word, "Denial," has complied with the provisions of pleading and Practice Act No. 300 of 1914.

3. **Louisiana Digest—Bills and Notes— Par. 209.**
   The defendant who, in answering each paragraph specifically, merely states the word, "Denial," does not thereby specifically deny the signature to a note which is the basis of plaintiff's suit.

ON THE MERITS

4. **Louisiana Digest—Bills and Notes—Par. 222; Evidence, Par. 53, 59.**
   Where the defense to a note is a special plea of payment, the burden of proving this payment is on the defendant who pleads it.

5. **Louisiana Digest—Appeal—Par. 625, 630.**
   The judgment of the trial court on a question of proof of payment of a promissory note being manifestly erroneous is reversed.

Appeal from the Third Judicial District Court of Louisiana, Parish of Claiborne. Hon. J. E. Reynolds, Judge.

This is a suit on a promissory note. The defense is payment.

There was judgment for defendant and plaintiff appealed.

Judgment reversed.

Dhu Thompson, of Ruston, attorney for plaintiff, appellant.

McClendon, Morelock & Seals, of Homer, attorneys for defendant, appellee.

ODOM, J. This is a suit on a promissory note. Plaintiff sues defendant to recover the sum of $760.80 with interest thereon at the rate of 10% per annum from January 16, 1920, until paid, and 10% additional on the principal and interest as attorney's fees.

Plaintiff attaches to and makes a part of his petition a promissory note dated at Junction City, Arkansas, January 16, 1920, for the above amount, made payable to T. B. Henderson and signed "A. I. Alford."

The note is an unconditional promise to pay the said amount on December 1, 1920, with 10% per annum interest from its date until paid, and providing for 10% attorney's fees.

Defendant filed an answer in which he denied all the allegations of plaintiff's petition, except the one alleging that he is a resident of Claiborne parish, which is admitted.

In paragraph five of his answer, he says:

"Further answering, your defendant avers that the note attached to plaintiff's petition has long since been paid and was paid before it came into the hands of the plaintiff herein and that plaintiff had full knowledge of this fact at the time he received said note."

The trial in the District Court resulted in a judgment for defendant, rejecting plaintiff's demand at his cost, from which judgment he has appealed.

OPINION

Article 324 of the Code of Practice provides that when a demand is founded on an act under private signatures which is alleged to have been signed by the de-

fendant, the defendant shall be bound to acknowledge expressly or deny his signature in his answer.

Article 325 provides that if the defendant denies his signature the plaintiff must prove the same; and Article 326 provides that the defendant whose signature shall have been proved after his having denied the same shall be barred from every other defense.

Reference to defendant's answer dis closes that he denied every allegation of plaintiff's petition, except the allegation as to his residence, which was admitted.

Defendant's signature to the note sued on was proved on the trial and in fact was admitted by him as a witness in his own behalf..

Plaintiff urges in brief that defendant is barred from urging his plea of payment because he denied his signature which was proved. It will be noted that defendant has made no specific denial of his signature. Plaintiff's petition is in four paragraphs. Defendant's answer is in five paragraphs. In paragraph one he admits he is a resident of Claiborne parish as alleged, but denies all other allegations in said article. Under each of the articles, two, three and four, he writes the word "Denied." He adds a fifth paragraph in which he pleads payment of the note.

We regard defendant's answer with reference to the allegations of plaintiff's petition as having the effect of a general denial insofar as his signature to the note is concerned. He has complied with the pleading and practice act (Act 300 of 1914), by answering each article of the petition seriatim, but he has gone no further than to say "Denied." He did not specifically deny his signature. It has been held that the denial must be express and specific and that even the denial of the execution of a note is not equivalent to a denial of the signature.

Stockton vs. Truxton, 8 La. 224.

Ware vs. Elam, 8 Mar. (N. S.) 329.

Miller vs. Cohen, 1 La. 478.

It has also been held that when the signature, not specifically denied, is proved, defendant is not cut off from other defenses.

Bennett vs. Allison, 2 La. 419.

Hyde vs. Brown, 5 La. 33.

Beach vs. Wagner, 19 La. 87.

Defendant's answer being a mere general denial, admits the signature of the note.

Hyde vs. Brown, 5 La. 33.

Miller vs. Cohen, 1 La. 488.

Union Bank vs. Succn., 33 La. Ann. 301.

Miller vs. Whitfield, 16 La. Ann. 10.

Tesson vs. Gusman, 27 La. Ann. 267.

Our conclusion is that defendant did not by his answer cut himself off from urging his plea of payment.

## ON THE MERITS

In paragraph five of defendant's answer he says the note sued on "has long since been paid and was paid before it came into the hands of the plaintiff herein and that plaintiff had full knowledge of this fact at the time he received said note."

In view of the fact that the note is made payable to plaintiff, to whom it was delivered when signed by defendant on January 16, 1920, the defense that the note was paid to the knowledge of plaintiff when he obtained possession of it seems somewhat remarkable to us.

Plaintiff testified that the note was executed and delivered to him by defendant in the Merchants and Farmers Bank in Junction City, Arkansas, and that he had possession of it all the time up to the date it was delivered to his attorney to be used in connection with this suit. This testimony is not disputed. Just how the note could have been paid when plaintiff came into possession of it when it was shown that he got possession of it immediately

after its execution, we are unable to understand. However, we think it very probable that the defense which was intended to be urged is that the original debt due Henderson, the plaintiff, by Alford, the defendant, was paid prior to the execution of the note in January, 1920. But that defense is not urged. He says this note was paid. According to our appreciation of the testimony, defendant has utterly failed to show that this note has been paid or that the original debt which he admits that he owed Henderson in 1916 was ever discharged.

Defendant as a witness admits that he signed the note sued on and says, when asked what the note was given for, "that note was given for a car in 1916." The note is dated January 16, 1920. Therefore what the defendant means, of course, is that the debt for which the note was given was for a car which he purchased back in 1916. He was then asked if it had been paid and he said it had. Being asked how he paid the note, he said: "I don't know, I paid it about three times. I don't know when I did quit paying it. In 1916 that note was given when—I got it at the Merchants and Farmers Bank, fixed up there —Mr. Henderson left there and I never could; I never could pay them; the more I paid them the more I had to pay."

He says he paid it again in 1919 and that he paid it the last time in 1920. On being asked whether he paid the note with cash, other notes or collateral, he answered that he paid it with cash. (Tr. page 40.) Immediately after saying that he paid the note in cash, he stated (Tr. page 41), "The Merchants and Farmers Bank taken it up. I paid the bank and Mr. Henderson was going to ——." And he was asked: "When was that, Mr. Alford?" and he said: "1920, he was going to forward me the note from his house." This part of his testimony must have reference to the note sued on,

as it is dated January 16, 1920. Therefore his statement that he paid the note in cash has reference to the payments in 1917 and 1919 which he claims that he made, but he is positive that he paid it three times, and on being asked why he paid it three times he said: "I had the utmost confidence in Mr. Henderson."

While defendant's testimony as to when and how he paid the note is badly mixed, we think it reasonably clear that what he intends to plead is that he paid the Merchants and Farmers Bank, the amount of this debt and that the bank paid Henderson; for on page 42 of the transcript he says: "I paid the bank, that is all I could do; the bank paid Mr. Henderson."

*   *   *   *

"The bank paid Mr. Henderson in 1920." On being asked if he knew the bank paid Mr. Henderson, he said: "I don't know; I paid them; I afterwards paid them; I got that much confidence in them."

"Q. Who did you ask?
"A. Mr. Murphey in the bank there.
"Q. You asked Mr. Murphey; was Mr. Henderson in the bank at that time?"
"A. Yes. He was sitting right there.
"Q. You asked Mr. Murphey?
"A. I asked Mr. Murphey to take that thing off, I couldn't pay him."

And further in his testimony he insists that the bank paid Henderson, and says (Tr. page 43):

"Why sure; no, sir; I got the bank to take it up, I paid the bank; that is all I can tell you."
"Q. Did Mr. Henderson agree that the Merchants and Farmers Bank should take up this note?
"A. Sure, Mr. Henderson was sitting right there.
"Q. You had your agreement with whom?
"A. Mr. Murphey; I got him when he went into the business there to come out; when he come in there I told him I

couldn't pay Mr. Henderson; I walked in; I give two mortgages on my property, nearly seven thousand dollars."

This all took place in 1920, and, of course, after the execution of the note sued on, which is dated January 16, 1920. Thus it is clear that defendant does not claim that he paid Henderson personally but that he paid the bank and that the bank paid Henderson. We think it logical to conclude, therefore, from Alford's own testimony that if the bank has not paid Henderson he has not been paid.

According to Alford's testimony a Mr. Murphey is the only party who knew about the arrangement which he had made with the bank to take up the note and that Murphey was present when the conversation took place between Henderson and himself. It seems that several years prior to 1920 Henderson had been president of the Merchants and Farmers Bank of Junction City, Arkansas, and that Mr. Murphey had been cashier or teller. About the time of the transaction Henderson ceased to be president and Murphey took his place. Murphey was called as a witness by plaintiff for the sole purpose of proving the conventional rate of interest under the laws of the state of Arkansas. He was then cross-questioned by counsel for defendant and was asked specifically if Alford had not had a complete settlement with his bank in January, 1920. He explained that he does not know what might have taken place about that time because Henderson looked after the notes. He says that after he took charge he found that Alford owed the bank a considerable amount represented by a note which Henderson claimed to be well secured and that on investigation he found that not more than ten per cent of the debt was secured and that he got Alford to execute a mortgage on his real estate "to cover this note which was around $4000.00."

(Tr. page 31). This, he says, was in May, 1920. He says that Alford may have had a settlement with Henderson in January and he was asked: "The mortgage note that Alford gave the Merchants and Farmers Bank in 1920, what did that cover?"

"A. That covered his tital indebtedness to the Merchants and Farmers Bank."

And he says that from time to time Alford renewed his paper at the bank.

Murphey makes it plain, we think, that in the early part of 1920 Alford owed the bank approximately $4000.00 and to secure that debt he executed a mortgage on his real estate. In the year following Alford paid the bank in full.

Murphey was asked (Tr. page 38):

"Q. How much did he pay the Merchants and Farmers Bank?
"A. My recollection, something better than $4400.00."

So we find that the $4000.00 debt which Alford got the bank to carry by providing security was all due the bank and was paid in 1921 to the bank. So that the bank had no funds of Alford's with which to pay the Henderson debt.

Alford says that Murphey understood that the bank was to take up his note to Henderson and that the bank did take it up. But Murphey does not say that. If, indeed, Murphey did understand that and if, as a matter of fact, the bank did pay Henderson, why did not Alford prove that by Murphey? He was present during the trial and was called to the stand and testified. But defendant's counsel did not examine him on that point. We are warranted in concluding, under the well-established principle, that if Murphey had given testimony on that point it would have been against defendant; for as stated defendant says that Murphey was acquainted with the entire transaction, heard the conversation between himself and Hen-

derson as to the bank's taking care of the Henderson debt; therefore Murphey, president of the bank, was the one witness by whom the payment of this note could have been proved, if, indeed, it had been paid in the manner detailed by defendant himself. '.

It is not suggested that the $4000.00 which Mr. Murphey, the president of the bank, says covered the amount which Alford was due the bank in the early part of the year 1920 included the amount represented by the note sued on in this case, and if it had been suggested we hold that such a conclusion would not be warranted by the testimony in this case.

Having tendered the special plea of payment, the burden was on defendant to prove it. His own explanation of the payment is that the bank paid the note for him. If it be true that the bank did make the payment for him, undoubtedly the bank's books would show that fact, and Mr. Murphey, the president of the bank, who was familiar with the books and with this transaction, would be able to testify as to the payment.

The testimony makes it clear that in 1916 defendant purchased an automobile from plaintiff and that he gave his note for the price thereof or a part of it, and while he says he paid the note twice, once in 1917 and again in 1919, we are not impressed with his testimony. If he had paid it even once it does not look at all reasonable that he would have given his note for the same amount on January 16, 1920.

The testimony shows that defendant renewed his paper with the bank from time to time, the last time in the early part of 1920. He evidently did the same with reference to the amount that he was due on the automobile, which he had purchased from Henderson in 1916. We think defen-

dant has utterly failed to discharge the burden laid upon him of proving payment.

The note on its face provides for the payment of interest at ten per cent. It is an Arkansas contract and the proof shows that ten per cent is the conventional rate of interest in that state. The note also provides for attorney's fees at ten per cent.

For the reasons assigned, it is ordered, adjudged and decreed that the judgment of the lower court be reversed, and set aside, and it is now ordered, adjudged and decreed that the plaintiff, Tom B. Henderson, do have judgment against and recover from the defendant, A. I. Alford, the sum of $760.00 with 10% interest thereon from January 16, 1920, until paid, and 10% attorney's fees on the amount of principal and interest, together with all costs of this suit.

_____

## ON APPLICATION FOR REHEARING

CARVER, J. Defendant's counsel ask a rehearing, claiming that defendant testified positively that he had paid the note and that plaintiff's testimony to the contrary should not be believed because he was successfully impeached.

We have re-examined the record and are confirmed in our original opinion that neither defendant's testimony nor the testimony of Murphey shows payment. Defendant does not even claim to have paid the note himself and does not claim to know, of his own knowledge, that the bank paid it. His statement that the bank paid it is purely hearsay, derived, he says, from what Murphey told him. He says (page 15):

"Q. Now you know what the bank paid Mr. Henderson?
"A. I don't know; I paid them, I afterwards paid them; I got that much confidence in them.
"Q. Who did you ask?
"A. Mr. Murphey in the bank there."

(Page 17)

"Q. How do you know they paid Mr. Henderson?

"A. Well, I am just telling you what they told me they were going to do; I believe they would go ahead; we got some more witnesses here."

But Murphey's testimony does not show that the bank paid the note. On the contrary, the amount paid by defendant to the bank was about $4400.00, which just about covered what defendant owed the bank itself, with interest. Murphey says (pages 4 and 5):

"Q. In May, 1920, he executed a mortgage, did he?

"A. To us, yes.

"Q. A little over four thousand dollars?

"A. My recollection it was.

"Q. The mortgage note that Mr. Alford gave the Merchants and Farmers Bank in May, 1920, what did that cover?

"A That covered his total indebtedness to the Merchants and Farmers Bank."

(Page 9)

"Q. Mr. Murphey, you don't know anything about this particular note sued on, or Mr. Henderson's personal affairs and transactions with Mr. Alford, do you?

"A. No, I had no personal knowledge of it at that time. Now later this particular note, I knew this note existed later; Mr. Henderson proposed to sell me this note and later Mr. Alford said something to me about Mr. Henderson claiming a note against him. I wrote Mr. Henderson to know what he would take for the note, figuring I might get them together on a settlement some way, and his answer to me was it would be face value."

Murphey further says (page 11):

"Q. How much did he (meaning defendant) pay the Merchants and Farmers Bank?

"A. My recollection, something better than $4400.00."

Mr. Murphey would certainly not have given the testimony above quoted from page 9 if he had paid or knew the bank had paid the note in question.

Rehearing refused.